IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| KEVIN HERRIOTT, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:19-cv-00750-DCN |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| NFN PARRISH, NFN DUNN, NFN | ) | |
| MALNADO, NFN MATA, NFN LEVELS, | ) | |
| NFN VELA, and NFN COXUM, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on United States Magistrate Judge Kevin McDonald's order and report and recommendation ("R&R") denying plaintiff Kevin Herriott's ("Herriott") motion to produce and motion for sanctions and recommending that the court deny Herriott's motion for default judgment and that the court grant defendants Major Parrish, Officer Dunn, Officer Maldonado, Officer Mata, Lieutenant Level, Captain Vela, and Sergeant Coaxum's[1] (collectively, "defendants") motion for summary judgment., ECF No. 132. For the reasons set forth below, the court adopts the R&R, denies Herriott's motion for default judgment, and grants defendants' motion for summary judgment.

## I.  BACKGROUND

Herriott is an inmate within the South Carolina Department of Corrections ("SCDC"). In this action, Herriott alleges that while he was housed in Broad River Correctional Institution's Restricted Housing Unit, defendants violated his Eighth and

---

[1] The court leaves the original spelling of defendants' names in the caption but uses the correct spelling of the names in the remainder of the order.

Fourteenth Amendment rights by using excessive force against him and acting indifferently to his resulting injuries and medical needs. Herriott's allegations arise from three different incidents that occurred on September 6, 2018; September 18, 2018; and September 19, 2018, respectively. The R&R recounts the evidence related to those incidents in detail.

Herriott filed his complaint in this action on March 22, 2019. On February 10, 2020, Herriott filed a motion to produce, ECF No. 101, and defendants responded on February 24, 2020, ECF No. 107. Defendants filed a motion for summary judgment on March 6, 2020, ECF No. 114, and Herriott filed a response on March 18, 2020, ECF No. 119. Defendants replied on April 15, 2020. ECF No. 129. Herriott then filed a motion for default judgment on March 11, 2020. ECF No. 118. Defendants responded on March 25, 2020, ECF No. 124, and Herriott replied on April 3, 2020, ECF No. 128. Finally, Herriott filed a motion for sanctions on April 3, 2020, ECF No. 127, to which defendants responded on April 17, 2020, ECF No. 130.

The magistrate judge issued an order denying Herriott's motions to produce and for sanctions and an R&R recommending that the court grant defendants' motion for summary judgment and deny Herriott's motion for default judgment. ECF No. 132. Herriott filed objections on June 5, 2020. ECF No. 135. Defendants filed a motion for extension of time to file their reply, which the court granted; however, the new deadline to file the reply was June 26, 2020, and defendants never filed a reply. Therefore, the objections are ripe for review.

## II.  STANDARD

### A.  Magistrate Judge Order Review

Magistrate judges have "the authority to hear and determine any pretrial matter pending before the court" except for dispositive motions.  United States v. Benton, 523 F.3d 424, 430 (4th Cir. 2008).  A party may object to a magistrate judge's order on a nondispositive matter within 14 days of service of the order.  Fed. R. Civ. P. 72(a).  The district court reviews such orders for clear error.  28 U.S.C. § 636(b)(1)(A); Springs v. Ally Fin. Inc., 657 F. App'x 148, 152 (4th Cir. 2016).

### B.  R&R Review

When reviewing dispositive motions, the magistrate judge makes only a recommendation to the court.  Mathews v. Weber, 423 U.S. 261, 270 (1976).  The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court.  Id. at 270-71.  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made.  Id.  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

## III.  DISCUSSION

The court first considers Herriott's two motions on which the magistrate judge issued an order: the motion to produce and the motion for sanctions.  The court then turns

its attention to Herriott's objections to the R&R's recommendation that the court deny Herriott's motion for default judgment and grant defendants' motion for summary judgment.

### A. Motions to Produce and for Sanctions

Herriott objects to the magistrate judge's denial of his motion to produce and motion for sanctions. In Herriott's motion to produce, he asked the court to order defendants to produce SCDC's excessive force policy. ECF No. 101. He attached to his motion a "law book request" that Herriott submitted to the SCDC Office of the General Counsel in which he requested the excessive force policy. ECF No. 101-1. The document shows that the request was not filled because access to the policy is restricted. Herriott now argues in his objections that he "asked for production to offer proof" that he only filed two grievances at Broad River, as attested in an affidavit submitted by defendants, and that his medical record was not produced to him in its entirety. ECF No. 135 at 2. He also appears to argue that he is entitled to evidence about "investigative calls" use to report complaints about correctional staff and to his "mailing records of ledgers." Id. at 3. However, none of these requests were included in Herriott's motion to produce. Instead, his motion only focused on the SCDC's excessive force policy. As such, they are irrelevant to whether the magistrate judge committed clear error in denying Herriott's motion to produce the excessive force policy, and the court finds no such error.

Next, Herriott objects to the magistrate judge's denial of his motion for sanctions, contending that "Honorable McDonald has abused his discretion by failing to cite legal citations and controlling authority when **defects** of the erroneous ruling on sanctions and default judgment show clearly that the defendants were 'personally responsible' for the

default." ECF No. 135 at 4 (emphasis in original). Herriott requested sanctions due to defendants' failure to "answer and respond to discoveries, interrogatories," ECF No. 127 at 1. Herriott's objection appears to apply to the R&R's recommendation on his motion for default judgment, not his motion for sanctions, as it contains no mention of any failure to respond to discovery requests. Therefore, the court finds no clear error in the magistrate judge's order denying Herriott's motion for sanctions.

### B. Motions for Default Judgment and for Summary Judgment

Next, Herriott objects to the R&R's recommendation that the court deny his motion for default judgment and grant defendants' motion for summary judgment.

### a. Motion for Default Judgment

Herriott filed an "affidavit of default," which was entered on the docket as a motion for default judgment, arguing that because defendants have failed to file an answer, dispositive motions, and/or produce discovery, defendants are in default. The R&R found that defendants fulfilled their discovery obligations and recommended denying the motion. In his objections, Herriott faults the magistrate judge for failing to cite to any legal authority supporting his recommendation and argues that defendants have failed to offer an excuse for their alleged default. Herriott also argues that defendants have made no effort to set aside the clerk's entry of default. Finally, Herriott argues that he "has a right to a ruling from the Court whereas in the position of the Plaintiff's standing when the court errs in excluding and admitting evidence is reversible

error because it has denied the Plaintiff a substantial right," citing Federal Rule of Evidence 103.  ECF No. 135 at 4.

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, the clerk must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  Here, defendants filed an answer to Herriott's complaint, ECF No. 42, and filed a motion for summary judgment, ECF No. 114. Therefore, they have clearly filed an appropriate pleading and continue to defend the case.  Moreover, as the R&R found, defendants have complied with the court orders related to Herriott's discovery requests.  Because default judgment is not warranted, defendants were not obligated to offer any excuse for their non-existent default.  In a similar vein, defendants did not need to file a motion to set aside default because the clerk never entered default in this case.  As to Herriott's final objection regarding the exclusion and admission of evidence, the Federal Rules of Evidence govern the admissibility of evidence.  There have been no rulings in this case on the admissibility of evidence, making the Federal Rules of Evidence irrelevant to the matters before the court. In sum, the court agrees with the R&R and denies Herriott's motion for default judgment.

### b.  Motion for Summary Judgment

The court now turns to the R&R's recommendation that the court grant defendants' motion for summary judgment.  The R&R recommends summary judgment in favor of defendants because: (1) Herriott failed to exhaust his administrative remedies; (2) the evidence before the court fails to demonstrate that defendants acted with a sufficiently culpable state of mind or treated Herriott with medical indifference; and (3)

defendants are entitled to qualified immunity.  Herriott objects to all three; however, the court only considers the second and third arguments because even assuming Herriott did exhaust his administrative remedies, summary judgment in favor of defendants is still warranted.

Herriott first argues that the court must deny summary judgment when the non-moving party has not had the opportunity to discover information that is essential to its opposition, citing Federal Rule of Civil Procedure 56(f) and "28 U.S.C.A.".  Herriott is mistaken.  Federal Rule of Civil Procedure 56(d) provides that a court <u>may</u> deny summary judgment when "a nonmovant show by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition."  Herriott appears to argue in his motion for sanctions that defendants' motion for summary judgment should be stricken due to defendants' failure to produce discovery, suggesting that Herriott cannot present the facts he needs for his opposition.  However, he did not submit an affidavit or declaration as required by the law, and as the R&R discussed, defendants have complied with their discovery obligations.  Herriott also filed a response to defendants' motion for summary judgment, to which he attached various exhibits and in which he failed to argue that summary judgment was inappropriate due to the need for additional discovery.  Therefore, the court overrules this objection.

Next, Herriott argues that the R&R misapplied the summary judgment standard of review.  He contends that his "evidence of material fact demonstrates that there was no need for the application of force in neither the three occurrences of the use of excessive force."  ECF No. 135 at 5.  Herriott primarily disputes the R&R's finding that any use of force by defendants was in response to Herriott's confrontational and aggressive

behavior, arguing that reasonable minds could question whether defendants applied force "maliciously and sadistically to cause harm" as opposed to being "a good-faith effort to maintain or restore discipline." See Parker v. Stevenson, 625 F. App'x 196, 198 (4th Cir. 2015). Herriott contends that this is particularly true considering the environment of prison. As the R&R explained, an excessive force claim requires "inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008). "[T]he core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Parker, 625 F. App'x at 198. The R&R found that, based on sworn testimony and incident reports, all of defendants' use of force was in response to Herriott's own use of force or hostile acts and used to maintain order. The court considers each incident in turn.

In the first incident, on September 6, 2018, Herriott alleges that Officers Maldonado, Dunn, and Mata slammed his arm in the food flap on Herriott's cell door. ECF No. 20 at 11. Officer Maldonado submitted an affidavit in which he attested that Heriott refused to step away from his food flap and bit Officer Maldonado, causing Officer Maldonado to pull his arm back and close the food flap. Herriott claimed that the officers slammed the food flap on his arm, causing bruising and swelling, but admits to refusing to step away from the food flap and to biting Officer Maldonado.[2] In his

---

[2] Despite Herriott's allegation that all three officers participated in this conduct, the evidence shows that Officer Maldonado was the only officer who closed the food flap.

objections, Herriott explains the reason why he was staying at his food flap—because he wanted to talk to someone about his concern that his mail was being interfered with. He also argues that there was no perceived threat that required the use of force because he was locked inside of his cell, meaning any use of force against him was unreasonable.

Based on the evidence presented by both parties, there is no dispute that Herriott refused to step away from the food flap and that Herriott bit Officer Maldonado. All that remains is the question of Officer Maldonado's state of mind, and even construing all inferences in favor of Herriott, the evidence shows that Officer Maldonado slammed the food flap in "a good-faith effort to maintain or restore discipline" because Herriott bit him. According to Officer Maldonado, he "pulled [his] arm back and then closed the food flap" in response to Herriott biting him. ECF No. 114-5 at 2. He also explains that he did not intend to harm Herriott. Herriott claims that he posed no threat to Officer Maldonado, meaning that Officer Maldonado must have intended to harm him, because Herriott was locked in his cell. However, that claim is clearly contradicted by the fact that Herriott was able to harm Officer Maldonado while locked in his cell by biting his arm and that an open food flap allowed opportunity for more harm. There is no dispute that Herriott bit Officer Maldonado, and there is no evidence to suggest that Officer Maldonado closed the food flap for any reason other than to prevent Herriott from causing further harm. As such, summary judgment is appropriate on Herriott's excessive force claim based on the September 6 incident.

As for the medical indifference claim arising from this incident, the R&R found the evidence does not show that Herriott received medical attention for his claimed bruising and swelling on his arm but that he did receive medical attention a few days later

when he staged a suicide, meaning defendants were not medically indifferent to Herriott. In his objections, Herriott only discusses his medical indifference claim arising from the September 18 incident.  As such, the court adopts the R&R's recommendation that summary judgment in favor of defendants be granted for Herriott's medical indifference claim arising out of the September 6 incident.

The second incident at issue here occurred on September 18, 2018.  Herriott alleges that on this date, Major Parrish, Lieutenant Level, and Captain Vela assaulted him in Major Parrish's office.  The R&R found that summary judgment was warranted on this claim because the evidence showed that defendants' force was used in response to Herriott's resistance to restraints and Herriott spitting on the officers, meaning they were simply attempting to restore discipline and order.  In his objections, Herriott explains that he was trying to talk to someone to be placed in protective custody and to express his complaints about a variety of issues, which is presumably how he ended up in Major Parrish's office.  However, Herriott does not deny that he was resisting defendants nor does he explain why defendants' use of force was not a "good-faith effort to maintain or restore discipline."  As such, Herriott's objections do not convince the court to reject the R&R's conclusion, and the court finds that summary judgment in favor of defendants is warranted for Herriott's excessive force claim arising from the September 18 incident. As for his medical indifference claim, the R&R found that Herriott saw a nurse the day after this incident, meaning that he received the appropriate medical treatment.  In his objections, Herriott contends that he suffered a bone spur for more than 13 months while he was waiting for an x-ray to be properly treated for the injury he sustained on September 18.  Herriott attached various documents to his response to the motion for

10

summary judgment that reflect his repeated requests for an ankle x-ray. However, all but one of those requests took place at various other institutions after Herriott had been transferred from Broad River. ECF No. 119-6 at 2–13. There is evidence of one form for a sick call that appears to summarize the sick calls that Herriott submitted while at Broad River, in which he states that he placed a sick call for an x-ray of his ankle on September 20, 2018. Id. at 14. Defendants attached to their motion for summary judgment an administrative note that a nurse saw Herriott the day after the September 18 incident. That note reflects that Herriott complained that his right elbow "popped out" three times, that his left scapula area was sore, and that he was experiencing back pain. ECF No. 114-3 at 7. There is no mention of ankle pain or a request for an x-ray, and the administrative note concludes by stating "[n]o other complaints." Id.

To establish a deliberate indifference to medical needs claim, "[t]he plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." Heyer v. United States Bureau of Prisons, 849 F.3d 202, 209–10 (4th Cir. 2017). "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." Formica v. Aylor, 739 F. App'x 745, 754 (4th Cir. 2018). Herriott alleges that he sustained his ankle injury on September 18, and he was transferred from Broad River to Kershaw Correctional Institution on November 13, 2018, ECF No. 114-2 at 3. The only evidence in the record that Herriott requested an ankle x-ray during this two-month time period is the sick call form in which Herriott states that he

11

requested an ankle x-ray on September 20. There is no indication on this form that the form was ever received by any staff member at Broad River. Nevertheless, even viewing this evidence in the light most favorable to Herriott and concluding that Herriott did request an x-ray on September 20, there is no evidence that defendants intentionally delayed an x-ray or intentionally interfered with Herriott's medical care during the final two months Herriott was housed at Broad River. The fact that Herriott received medical attention on September 19 suggests just the opposite. Therefore, the court agrees with the R&R that summary judgment is warranted on this medical indifference claim.

In the third incident at issue, Herriott alleges that Sergeant Coaxum sprayed him with an excessive amount of chemical munitions on September 19, 2018. The R&R found that this incident did not rise to unconstitutional excessive force because the uncontroverted evidence showed that Herriott acted in a hostile manner when being returned to his cell, refused to cooperate, and punched Officer Maldonado in the stomach. Herriott does not present any objections to the R&R's recommendation on his excessive for claim related to this incident. As such, the court reviews the R&R for clear error and finds none, meaning that summary judgment is warranted on this claim. As for his medical indifference claim, Herriott argues in his objection that he "was not properly or adequately treated after being maced in the facial area, not afforded a shower, nor decontaminated." ECF No. 135 at 10. However, Sergeant Coaxum attested that Herriott was instructed to use running water to wash the chemical munitions from his face and that Herriott was seen by a nurse after the incident. ECF No. 114-6 at 2. The incident report also shows that Herriott received medical attention. Id. at 14. Herriott presents no evidence to contradict this account, meaning there is nothing to suggest that Herriott was

deprived of medical attention.  As such, the court finds summary judgment to be warranted on this medical indifference claim.

Finally, Herriott objects to the R&R's finding that defendants are entitled to qualified immunity, arguing that his "evidence demonstrates that the defendants are not entitle [sic] to qualified immunity when the defendants have made considered decisions not only to engaged [sic] in unlawful criminal activity, but to fabricate and cover up their actions before this tribunal is unethical and no respect to the law in which they-defendants [sic] represent."  ECF No. 135 at 11.  However, Herriott cites to no evidence to support this proposition, and this argument is unrelated to the two-prong inquiry of qualified immunity—whether a constitutional violation occurred and whether the constitutional right violated was clearly established.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  Therefore, the court overrules Herriott's objection.

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the R&R, **DENIES** Herriott's motion for default judgment, and **GRANTS** defendants' motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 14, 2020**
**Charleston, South Carolina**

13